IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ANDREA REVELS, § | |
|     Plaintiff, § | |
| v. § | No. 3:19-CV-1168-L-BH |
| § | |
| STANDARD INSURANCE COMPANY, § | |
|     Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

By *Order of Reference*, filed September 16, 2019 (doc. 15), before the Court for recommendation is *Plaintiff's Motion to Compel Discovery and Brief in Support*, filed September 13, 2019 (doc. 13). Based on the relevant filings and applicable law, the motion is **DENIED**.

**I. BACKGROUND**

Andrea Revels (Plaintiff) sues Standard Insurance Company (Defendant) under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, based on its denial of her claim for long term disability (LTD) benefits under her former employer's employee benefit plan. (doc. 1 at 1-2; doc. 13 at 5.)[1] Plaintiff contends that a preponderance of the evidence establishes that she is entitled to LTD benefits under the plan. (doc. 1 at 3.) She alleges that Defendant "operated under a conflict of interest" because it was responsible for both reviewing claims and paying benefits under this plan, and that it "used unqualified and/or biased record reviewers." (*Id.*)

Plaintiff seeks discovery regarding Defendant's relationship with two non-treating medical consultants who were hired to review her medical records and then opine on her restrictions and limitations, including, in particular, (1) its financial arrangements with these medical consultants;[2]

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page.

[2] Interrogatory 1(a)-(d); Request 6(a)-(d).

(2) its knowledge and tracking of their performance;[3] and (3) documents it provided to them and its input into the procedures, guidelines, and processes they followed.[4] (doc. 13 at 5, 10-16; doc. 14 at 5-6, 9-11.)  She contends that regardless of the applicable standard of review, a conflict of interest exists, and that the discovery she seeks is relevant, discoverable and necessary because goes to the completeness of the record, Defendant's compliance with governing ERISA regulations, and context.  (doc. 13 at 8-9.)  She also claims that because the consultants were paid by Defendant, discovery is necessary "to expose [their] motivation and allegiance to supporting Defendant's claim denials," and that it will "impact[ their] credibility . . . and the weight to be given their opinions."  (*Id.* at 11-12.)  Defendant objects to the discovery on grounds that conflict of interest discovery and discovery regarding compliance with procedural regulations is irrelevant under the *de novo* standard of review which the parties agree applies in this case.  (doc. 18 at 6-7, 10-11.)  It also objects on grounds of overbreadth and undue burden.  (*Id.* at 14-16.)

## II.  ERISA

"ERISA and its regulations contemplate a system in which the administrator makes a decision as to whether to grant or deny benefits based on the factual scenario and based on its interpretation of the relevant plan provisions."  *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 395 (5th Cir.1998).  It provides federal courts with jurisdiction to review those decisions.  *Estate of Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516, 521–522 (5th Cir.2000) (citing 29 U.S.C. § 1132(a)(1)(B)).

---

[3]Interrogatory 1(e)-(g); Request 6(e)-(f).

[4]Interrogatories 2, 3; Requests 7, 8.

A.     **Standard of Review**

Section 1132(a)(1)(B) does not provide any guidance regarding the standard of review to be employed by the federal courts. *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999) (en banc), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008). The United State Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246, 256 (5th Cir. 2018) (en banc) (adopting the majority approach in holding that *Firestone*'s default *de novo* standard applies when reviewing a denial of benefits based on a factual determination by an administrator of a nondiscretionary plan).[5]

   1.     *De Novo Standard*

Under the *de novo* standard, the district court's essential task "is to determine whether the administrator made a correct decision." *Pike v. Hartford Life & Accident Ins. Co.*, 368 F. Supp. 3d 1018, 1030 (E.D. Tex. 2019) (quoting *Niles v. Am. Airlines, Inc.*, 269 F. App'x 827, 832 (10th Cir. 2008)). The court must "independently weigh the facts and opinions in the administrative record to determine whether the claimant has met his burden of showing that he is disabled within the meaning of the policy." *Id.* (quoting *Richards v. Hewlett-Packard Corp.*, 592 F.3d 232, 239 (1st Cir. 2010). It must also "resolve questions of material fact, assess expert credibility, and—most critically—weigh the evidence." *Id.* at 1035 (quoting *Weisner v. Liberty Life Assurance Company*

---

[5]Prior to *Ariana M.*, the Fifth Circuit had a bifurcated system of review in which courts reviewed legal determinations *de novo* and factual determinations for an abuse of discretion. *Id.* at 250 (citing *Pierre v. Connecticut Gen. Life Ins. Co./Life Ins. Co. of N. Am.*, 932 F.2d 1552, 1553 (5th Cir. 1991)).

*of Boston*, 192 F. Supp.3d 601, 614 (D. Md. 2016). "The administrator's decision to deny benefits 'is not afforded deference or a presumption of correctness.'" *Koch v. Metro. Life Ins. Co.*, No. 7:18-CV-00154-O, 2019 WL 6329383, at *2 (N.D. Tex. Nov. 26, 2019) (quoting *Pike*, 368 F. Supp. 3d at 1030). "Put simply, the [c]ourt must 'stand in the shoes of the administrator and start from scratch, examining all the evidence before the administrator as if the issue had not been decided previously.'" *Byerly v. Standard Ins. Co.*, No. 4:18-CV-00592, 2020 WL 1451543, at *18 (E.D. Tex. Mar. 25, 2020) (quoting *Stilz v. Metro. Life Ins. Co.*, No. CIVA 105CV-3052-TWT, 2006 WL 2534406, at *6 (N.D. Ga. Aug. 30, 2006), *aff'd by* 244 F. App'x 260 (11th Cir. 2007)); *see also Ariana M. v. Humana Health Plan of Texas, Inc.*, No. CV H-14-3206, 2018 WL 4384162, at *12 (S.D. Tex. Sept. 14, 2018), *aff'd by* 792 F. App'x 287 (5th Cir. 2019) (citations omitted) ("*De novo* review requires that the court apply the same standard as the plan administrator in deciding whether the benefits were owed under the plan's terms.").

### 2.   *Abuse of Discretion Standard*

If the plan grants the administrator discretionary authority, the court reviews a denial of benefits for abuse of discretion. *Firestone*, 489 U.S. at 115. "A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009). "If the administrator's decision to deny a claim is supported by 'some *concrete evidence* in the administrative record,' the administrator did not abuse discretion." *McDonald v. Hartford Life Grp. Ins. Co.*, 361 F. App'x 599, 608 (5th Cir. 2010) (quoting *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 2002) (emphasis original). When reviewing the lawfulness of the plan administrator's decision, courts weigh "several different considerations . . . before determining

4

whether a plan administrator abused its discretion." *Nichols v. Reliance Standard Life Ins. Co.*, 924 F.3d 802, 808 (5th Cir. 2019) (quoting *White v. Life Ins. Co. of N. Am.*, 892 F.3d 762, 767 (5th Cir. 2018)).  These "considerations 'are case-specific and must be weighed together before determining whether a plan administrator abused its discretion in denying benefits.'" *White*, 892 F.3d at 767 (quoting *Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465, 469 (5th Cir. 2010). "[A]ny one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." *Metro. Life Ins. Co.*, 554 U.S. at 117.

The Supreme Court has recognized that a plan administrator that both evaluates claims and pays claims for benefits has a structural "conflict of interest," and that "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits." *Id.* at 108 (citing *Firestone*, 489 U.S. at 115); *see also Vega*, 188 F.3d at 295 (a plan administrator that both insures and administers the plan "is self-interested, i.e., the administrator potentially benefits from every denied claim").[6] "A structural conflict may prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, such as where an administrator has a history of biased claims administration, or where circumstances surrounding the plan administrator's decision suggest procedural unreasonableness." *Nichols*, 924 F.3d at 813 (internal quotations and citations omitted). In other words, "[t]he greater the evidence of conflict on the part of the administrator, the less deferential [the court's] abuse of discretion standard will be."  *Vega*, 188 F.3d at 297; *see also Ellis*

---

[6]"Generally, there are two ways employee benefit plans may be created: (1) the employer funds the program and either contracts with a third party who administers the plan or provides for administration by a trustee, individual, committee, or the like; or (2) the employer contracts with a third party that both insures and administers the plan." *Vega*, 188 F.3d at 295.

5

*v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 270 (5th Cir.2004), *cert. denied*, 545 U.S. 1128 (2005) ("The degree to which a court must abrogate its deference to the administrator depends on the extent to which the challenging party has succeeded in substantiating its claims that there is a conflict.").

**B.    Scope of the Record**

Despite first adopting *Firestone*'s default *de novo* standard of review in *Ariana M.*, the Fifth Circuit explicitly reaffirmed its prior decision in *Vega* as the "leading case" on the scope of the record in ERISA cases, which would "continue to provide the guiding principles . . . for future cases that apply *de novo* review to fact-based benefit denials." 884 F.3d at 256-57 (citing *Vega*, 188 F.3d at 299). *Vega* held "that the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." 188 F.3d at 300. A plan administrator is required to identify the evidence in the administrative record and then give the claimant an opportunity to contest whether that record is complete. *Id.* at 299; *Ariana M.*, 884 F.3d at 256. Once the administrative record has been finalized, *Vega* allows a district court's departure from that record "only in very limited circumstances," even in the face of disputed facts. *Id.* The Fifth Circuit found that "[a]lthough some of *Vega*'s reasoning for limiting the record . . . depended on the abuse-of-discretion context, other interests it recognized support[ed] the same rule for *de novo* review" and "serve[d] the twin ERISA goals of allowing for efficient yet meaningful judicial review." *Id.* at 256-57 (citations omitted).[7]

---

[7]The other interests recognized in *Vega* for limiting the record included the interest in encouraging the resolution of disputes at the administrative stage, allowing speedier resolution of disputes that did end up in court, and the not "particularly high bar" for introducing evidence into the administrative record. *Id.* at 256.

The Fifth Circuit has delineated the "very limited circumstances" that warrant an exception to the general rule limiting the record to that before the administrator:

> One exception allows a district court to admit evidence to explain how the administrator has interpreted the plan's terms in previous instances. *Id*. (*citing Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 639 n.15 (5th Cir. 1992)). Another allows a district court to admit evidence, including expert opinions, to assist in the understanding of medical terminology related to a benefits claim. *Id.*

*Ariana M.*, 884 F.3d at 256. The court explained that "[t]hose situations are not actually expanding the evidence on which the merits are evaluated but providing context to help the court evaluate the administrative record." *Id.* (citing *Vega*,188 F.3d at 299). It has also specifically found that *Vega* does not prohibit the admission of evidence to resolve other questions, including questions concerning (1) "the completeness of the administrative record;" (2) "whether the plan administrator complied with ERISA's procedural regulations;" and (3) "the existence and extent of a conflict of interest created by a plan administrator's dual role in making benefits determinations and funding the plan." *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011) (citations omitted). The court noted that "[t]hese issues are distinct from the question of whether coverage should have been afforded under the plan," and it saw "no reason to limit the admissibility of evidence on these matters . . . in part . . . because evidence resolving these disputes may not be contained in the administrative record." *Id.* (citations omitted).

C.     **Scope of Discovery**

After considering the limits that *Vega* placed on the scope of admissible evidence in ERISA cases under § 1132(a)(1)(B), the Fifth Circuit went on to find in *Crosby* that "discovery request[s] for [information regarding the completeness of the record, procedural compliance, and conflict of interest] *may* be relevant and discoverable under the federal discovery rules." 647 F.3d at 263

7

(emphasis added). It noted that the scope of discovery is broad under Fed. R. Civ. P. 26(b)(1), and that discovery requests seeking admissible evidence were relevant. *Id.* at 262. The court also expressly cautioned, however, that because review of ERISA benefits determinations "is essentially analogous to a review of an administrative agency decision, district courts must monitor discovery very closely" and "be mindful of the limitations placed on the frequency and extent of discovery under the federal rules, particularly Rule 26(b)." *Id.* at 264. "For federal courts to engage in 'full review of the motivations behind every plan administrator's discretionary decisions' would 'move toward a costly system in which Article III courts conduct wholesale reevaluations of ERISA claims' and would seriously undermine ERISA's goal of resolving claims efficiently and inexpensively." *Id.* (quoting *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 814–15 (7th Cir.2006)).

Because it was decided seven years before the Fifth Circuit adopted *Firestone*'s default *de novo* standard of review in *Ariana M.*, *Crosby* only considered the permissible scope of discovery based on the limited types of evidence that are admissible under the abuse of discretion standard. The Fifth Circuit does not appear to have specifically considered the permissible scope of discovery under the *de novo* standard. Because it made clear in *Ariana M.* that the scope of the record remained the same under either standard, however, it is not inconceivable that the Fifth Circuit would find that the scope of discovery likewise remains subject to the guidance it previously provided in *Crosby*. In other words, even in cases subject to the *de novo* standard of review, district courts must continue to monitor discovery "very closely," keeping in mind the limitations in Rule 26(b)[8] and ERISA's goal of resolving claims efficiently and inexpensively. *See* 647 F.3d at 264.

---

[8]Rule 26(b) provides:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the

8

In this circuit, the burden is on the party resisting discovery to show how each discovery request is not relevant or is otherwise objectionable. *See McLeod, Alexander, Powel and Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir.1990) (*citing Josephs v. Harris Corp.,* 677 F.2d 985, 992 (3d Cir.1982)); *Chavez v. Standard Ins. Co.*, No. 3:18-CV-2013-N, 2019 WL 1767000 (N.D. Tex. Apr. 22, 2019) (applying *McLeod* in the context of ERISA discovery).

### III.  MOTION TO COMPEL

As noted, Plaintiff seeks discovery of (1) Defendant's financial arrangements with these medical consultants; (2) its knowledge and tracking of their performance reviewing claims; and (3) documents it provided to them and its input into the procedures, guidelines, and processes they followed.  (doc. 13 at 5.) Plaintiff contends that information regarding Defendant's financial relationship with the medical consultants involved in the review of her claim, as well as its knowledge and tracking of their past performance reviewing claims, goes to bias and will provide context for the Court to appropriately evaluate and weigh their opinions. (doc. 13 at 9.) Information regarding documents provided to the record reviewers and Defendant's input into the procedures, guidelines, and processes followed by its record reviewers is relevant, she argues, to determine whether Defendant complied with applicable procedural requirements. (*See id.* at 15-16.)

**A.    Financial Arrangements and Performance**

Primarily relying on *Chavez v. Standard Ins. Co.*, No. 3:18-CV-2013-N, 2019 WL 1767000 (N.D. Tex. Apr. 22, 2019), Defendant argues that Plaintiff's requests for information concerning the medical consultants seek "conflict of interest" discovery, which is irrelevant under a *de novo*

---

needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

9

standard of review. (doc. 18 at 10-11.)

In *Chavez*, the plaintiff sought to "compel the production of contractual and financial arrangements" between the defendant and its medical consultants to determine their role in the denial of the plaintiff's claim for benefits, as well as information regarding the defendant's internal claim procedures. *See id.* The plaintiff argued that notwithstanding the applicable *de novo* standard of review, the documents were relevant and discoverable under *Crosby* because *Vega* does not prohibit the admission of evidence regarding "other questions" raised in ERISA actions relating to the completeness of the administrative record, compliance with ERISA's procedural regulations, and conflict of interest, and that such other questions were raised in the case. *Id.* at *2. He argued that insurers often used expert opinions as a pretext to justify the denial of a claim, that the defendant could have created a financial incentive for them to unreasonably deny claims, and that compliance with ERISA's procedural regulations was relevant. *Id.* The defendant objected to the discovery requests, arguing that the information sought improperly went beyond the administrative record, and that plaintiff was actually seeking "conflict of interest" discovery, which was only relevant under an abuse of discretion standard. *Id.*

The *Chavez* court began its analysis by noting that both "[p]rocedural unreasonableness and conflict of interest discovery are relevant in cases where the court applies an abuse of discretion standard of review because it can affect a district court's deference analysis," since both were factors to be considered in analyzing whether an administrator abused its discretion. *Id. (citing Burell v. Prudential Ins. Co. of Am.,* 820 F.3d 132, 139 (5th Cir. 2016)). It found that in light of *Ariana M.*, the discovery sought by the plaintiff was unwarranted because a *de novo* standard of review applied,

10

and no deference would be given to the defendant's decision. *Id.* at *3.[9]

*Chavez* appears to be the only decision in this circuit that has considered the relevance of conflict discovery under *de novo* review. Courts in other circuits that also take a more restrictive view on the scope of the record have likewise found that similar conflict discovery is irrelevant under the *de novo* standard, focusing on the limited admissibility of extrinsic evidence and ERISA's goals of efficient and inexpensive resolution. *See Nguyen v. Sun Life Assurance Co. of Canada*, No. 314CV05295JSTLB, 2015 WL 6459689, at *2 (N.D. Cal. Oct. 27, 2015). In one of the cases cited in *Ariana M.* as an example of a more restrictive approach to the scope of the record, *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1025 (4th Cir. 1993) (en banc), the Fourth Circuit identified a non-exhaustive list of "exceptional circumstances" in which a district court might exercise its discretion to consider evidence outside the administrative record;[10] that list was subsequently cited with approval and adopted by at least two other circuits, including the Ninth Circuit. *See Opeta v. Nw. Airlines Pension Plan*, 484 F.3d 1211, 1217 (9th Cir. 2007); *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1203 (10th Cir. 2002). Courts in that circuit found that

---

[9]The court noted that the defendant's argument that the plaintiff was actually seeking conflict discovery was "*further* supported by language in the Complaint," which had been filed shortly after *Ariana M.* was decided and erroneously assumed that the abuse of discretion standard applied. *Id.* at *3 (emphasis added). That language was therefore not the only basis for the court's decision. By the time that the motion to compel was determined, however, the plaintiff had stipulated that the standard of review was *de novo* and argued, as here, that the discovery was still relevant under that standard. *See id.* at *2.

[10]This "non-exhaustive list" of "exceptional circumstances includes:

> claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process.

*Id.* at 1027.

11

the admissibility limits of the restrictive "exceptional circumstances" view "also constrain discovery." *See Nguyen*, 2015 WL 6459689, at *2 (*citing Polnicky v. Liberty Life Assurance Co. of Bos.*, No. C 13-1478 SI, 2014 WL 969973, at *2 (N.D. Cal. Mar. 5, 2014)(noting that although *Opeta* concerned admissibility rather than discoverability of extrinsic evidence, courts in that district had held that "in light of *Opeta*'s limits on admissibility of evidence in *de novo* cases and the ERISA's policy of keeping proceedings inexpensive and expeditious, it is appropriate to place similar limits on discovery.")); *Blaj v. Unum Life Ins. Co. of Am.*, No. 13-cv-04075-MMC (KAW), 2014 WL 2735182, at *2 (N.D. Cal. June 16, 2014) (same).

Those courts also noted that identification of a list of "exceptional circumstances" that may trigger the need for discovery had resulted in "considerable confusion," and that as a result, courts in that circuit were divided on the issue of whether conflict discovery is warranted under *de novo* review. *DeMarco v. Life Ins. Co. of N. Am.*, No. CV-19-02385-PHX-DWL, 2020 WL 906461, at *2 (D. Ariz. Feb. 25, 2020); *see also Nguyen*, 2015 WL 6459689, at *9 (the "tension between *Opeta*'s ostensibly 'restrictive' rule and the common situations that it describes has led district courts to contrary decisions"). Analyzing the diverging views, the court in *Nguyen* noted that some cases have found that a structural conflict justifies extrinsic discovery, while others have found that it is irrelevant on *de novo* review. 2015 WL 6459689, at *8 (citing cases). Some courts have held that discovery concerning a potential conflict of interest or bias by physician reviewers is relevant because it goes to the weight that courts will assign their opinions on *de novo* review. *Id.* (collecting cases); *see also DeMarco*, 2020 WL 906461, at *4 (collecting cases). Others have found that because medical reviewers are routinely employed by administrators, mere compensation does not itself justify discovery. *Id.* (collecting cases); *DeMarco*, 2020 WL 906461, at *4 (collecting cases).

*Nguyen* twice noted that under *de novo* review, courts were not concerned with the reasons why plan administrators or their third-party medical reviewers reached their decisions; they were only concerned with whether a plaintiff was entitled to benefits based on the administrative record. *Id.* at *6, 10. It also noted that structural conflicts and compensation of reviewers were common circumstances rather than exceptional. *Id.* at *6-7. The *Nguyen* court ultimately concluded that the cases allowing discovery based on a structural conflict, mere compensation or potential conflict of interest or bias by physician reviewers, without more, were inconsistent with the restrictiveness of the "exceptional circumstances" standard for the admissibility of extrinsic evidence and ERISA's concern for inexpensive and expeditious resolution. *Id.* at *11. Finding no exceptional circumstances, it denied the conflict discovery sought by the plaintiff. *See id.*; *see also De Marco*, 2020 WL 906461, at *4 (denying discovery because given the high bar of "exceptional circumstances," the plaintiff had not clearly established that, and it was not clear how, discovery regarding medical reviewers' compensation and potential bias was necessary for an adequate *de novo* review even though it could be probative, and the record already contained evidence that would allow it to make a credibility assessment, including records from the plaintiff's treating doctors); *Polnicky,* 2014 WL 969973, at *2 (citation omitted) (explaining that compensation received by the medical consultant was not by itself probative of credibility and denying discovery related to medical consultant's compensation where plaintiff did not "question [her] qualifications, raise any misrepresentations or discrepancies in [her] report, or provide any other facts which would indicate that [she] may have been biased").

  Although it noted the broad scope of discovery under Rule 26(b)(1), *Crosby* likewise appeared to constrain discovery in ERISA cases in this circuit by finding that discovery requests

13

relating to those limited circumstances *may* be relevant and cautioning courts to monitor discovery so as not to undermine ERISA's goal of efficient and inexpensive dispute resolution. Notably, the non-exhaustive list in *Quisenberry* appears broader than the limited circumstances identified in *Vega* and *Crosby* that warrant an exception to the general rule limiting the administrative record to what was before the administrator. As *Nguyen* persuasively notes, the existence of a structural conflict and mere compensation of third-party reviewers are common circumstances. A finding that the existence of these circumstances, without more, automatically entitles a party to conflict discovery appears inconsistent with *Crosby*.

      Here, the parties agree that the decision to deny Plaintiff's benefits claim is subject to a *de novo* standard of review. As in *Chavez*, Plaintiff argues that the information she seeks relates to "other questions" raised in ERISA actions, i.e., that it is relevant to determine if the plan administrator complied with the procedural regulations of ERISA, and gives context to the administrative record. She cites no authority for the proposition that the discovery she seeks goes to completeness of the record or procedural compliance, and it appears inconsistent with her claims that it goes to the medical consultants' bias and credibility and the weight to be given to their opinions. As the *Chavez* court explained, the district court will be reviewing and weighing all the medical evidence in the administrative record, with no deference or presumption of correctness accorded to Defendant's decision, as provided by *Ariana M*. *See Chavez*, 2019 WL 1767000, at *2; *Pike*, 368 F. Supp. 3d at 1030. It will be able to assess the soundness of the medical consultants' reasoning and the correctness of their conclusions in light of the medical evidence. *See Nguyen*, 2015 WL 6459689, at *11 ("If a medical reviewer seems to have 'summarily ignore[d]' a wealth of existing information; if his analysis is internally inconsistent; if he proceeds under factual statements

14

that are demonstrably incorrect—all this can weigh into whether, on *de novo* review, the district court concludes that the reviewer, and the insurer who relied on his opinions, correctly or incorrectly denied benefits."); *Blaj*, 2014 WL 2735182, at *4 (denying discovery into bias of medical reviewers because the district court had the ability to identify whether medical records were "cherry-picked" during *de novo* review); *De Marco*, 2020 WL 906461, at *4 (noting that the record already contained evidence that would allow it to make a credibility assessment, including records from the plaintiff's treating doctors).[11] As in *Chavez*, the record in this case reflects no basis for finding that the information Plaintiff seeks regarding any bias and credibility of the medical consultants involved in the review of her claim is relevant or necessary for an independent *de novo* review of Defendant's benefit decision, or that requiring its production is consistent with the limitations in Rule 26 and ERISA's goal of resolving claims efficiently and inexpensively. Defendant has met its burden to show lack of relevance, its objection is sustained, and Plaintiff's motion to compel discovery relating to Defendant's financial relationship and tracking of its medical consultants is **DENIED**.[12]

### B. Involvement with the Procedures, Guidelines, and Processes and Communications

Plaintiff seeks discovery related to the documents provided to the record reviewers regarding

---

[11]Plaintiff cites two cases from within the circuit in support of her claim that the discovery she seeks impacts the credibility of the medical consultants and the weight to be given their opinions, but both cases were subject to an abuse of discretion review. *See, e.g., Wittmann v. Unum Life Ins. Co. of Am.*, No. 17-9501, 2018 WL 3374164 (E.D. La. Jul. 11, 2018); *Dalrymple v. Metro. Life Ins. Co.*, No. 2:09-CV0174-TJW, 2010 WL 695828 (E.D. Tex. Feb. 23, 2010). She also cites two unpublished district court opinions from the Northern District of Illinois that granted similar discovery requests in ERISA cases involving *de novo* review. *See, e.g., Harding v. Hartford Life and Accident Ins. Co.*, No. 16-CV-6700, 2017 WL 1316264 (N.D. Ill. April 10, 2017); *Gavin v. Life Ins. Co. of North America*, No. 12 C 6178, 2013 WL 2242230 (N.D. Ill. May 21, 2013). The Seventh Circuit follows a more permissive approach to a district court's consideration of evidence outside administrative record than the Fifth Circuit, however, so these cases are not persuasive. *See Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1099 (7th Cir. 1994) ("[I]n its *de novo* review the district court may limit the evidence to the record before the plan administrator, or it may permit the introduction of additional evidence necessary to enable it to make an informed and independent judgment.").

[12]Because Defendant's relevance objection to the production of the documents that Plaintiff seeks has been sustained, its overbreadth and undue burden objections need not be considered. (doc. 18 at 15.)

Defendant's input into the procedures, guidelines, and processes followed by its medical consultants, as well as "all documents submitted to, received from, considered by, or generated by the record reviewers," including "those e-mails, memoranda, general guidelines, etc., provided independently of Plaintiff's claim file, but no less a part of the relationship and reflective of the structure within which Plaintiff's medical condition was evaluated." (*See* doc. 13 at 14-16.) She argues that she is "entitled to discover whether Defendant complied with the applicable [ERISA] requirements." (*Id.* at 16.) Defendant argues these discovery requests should be denied because whether it violated ERISA's procedural regulations is irrelevant to the court's *de novo* review. (*See* doc. 18 at 6-7.)

While the Fifth Circuit has addressed procedural irregularities in the context of an abuse of discretion standard, considering it a factor "weighed in deciding whether an administrator's decision was an abuse of discretion," *Lafleur v. Louisiana Health Serv. & Indem. Co.*, 563 F.3d 148, 159 (5th Cir. 2009) (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 971 (9th Cir. 2006)), it has not "directly address[ed] the impact, if any, that procedural deficiencies may have on cases where the court conducts *de novo* review," *Pike*, 368 F. Supp.3d at 1076 n.21. Nevertheless, in *Chavez*, the district court denied a similar request for procedural unreasonableness discovery, finding it unwarranted under *de novo* review. *Chavez*, 2019 WL 1767000, at *2-3. As noted, it explained that both "[p]rocedural unreasonableness and conflict of interest discovery are relevant in cases where the court applies an abuse of discretion standard of review because it can affect a district court's deference analysis," but such discovery is not warranted where the court applies a *de novo* standard of review as it affords no deference to the administrator's decision. *Id.* at *2.

Here, as in *Chavez*, Plaintiff seeks discovery regarding whether Defendant complied with ERISA's procedural regulations when it denied her claim in an ERISA action involving *de novo*

16

review. (*See* doc. 13 at 14-16.) As discussed, even though such information may be relevant under an abuse of discretion standard because it goes to a factor "that informs whether the reviewing court may give more weight to the plan administrator's conflict of interest," *Burell*, 820 F.3d at 139, the court does not weigh factors under *de novo* review, but instead reviews the administrative record and makes an independent determination as to the benefits determination, *Pike*, 368 F. Supp. 3d at 1030. Because a court affords no deference to the plan administrator's determinations on *de novo* review, Defendant's compliance with the procedural regulations of ERISA in handling Plaintiff's claim is irrelevant. *See Chavez*, 2019 WL 1767000, at *2 ("[E]ven if Chavez were only seeking the contractual and financial documents to demonstrate Standard's procedural unreasonableness in the handling of his claim, such discovery is not warranted here because the Court will apply a *de novo* standard of review and afford no deference to Standard."); *see also Pike*, 368 F. Supp.3d at 1076 n.21 ("[T]he Court is not convinced the alleged procedural irregularities are relevant on *de novo* review.") (citation omitted); *Knopp v. Life Ins. Co. of N. Am.*, No. C-09-0452 CRB (EMC), 2009 WL 5215395, at *4 (N.D. Cal. Dec. 28, 2009) ("Even if Defendants failed to follow claim procedures or guidelines, that failure might reflect upon the integrity and accuracy of the administrator's review of [plaintiff's] disability claim, but that review is entitled to no deference on *de novo* review and is therefore irrelevant."). Accordingly, Defendant's relevance objection is sustained, and Plaintiff's motion to compel discovery of documents provided to the medical consultants and for information regarding Defendant's input into the procedures, guidelines, and processes followed by its consultants, is **DENIED**.

## IV. CONCLUSION

Defendant's relevance objection is sustained, and Plaintiff's motion to compel discovery is

17

**DENIED.**

      **SO ORDERED**, this 30th day of November, 2020.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE